## Case No. 9,710.

### The MONITOR.

[4 Biss. 503.] 1

District Court, N. D. Illinois. July, 1868.

COLLISION—VESSEL AT DOCK—TUG WITH TOW.

1. A canal-boat moored at a certain dock by the order of the harbor-master is lawfully there, even though it be at a narrow place in the river.

2. A tug with a tow must maneuver cautiously and prudently; and suction of the water from a passing vessel is one of those natural incidents which she must guard against.

In admiralty.

DRUMMOND, District Judge. The canal-boat Preston, which the libellant owned, was, at the time of the collision, at the dock below the tunnel passage, as it is called, in the Chicago river, at Washington street, or was in the act of getting to the dock. On the part of the libellant's witnesses it is asserted that the canal-boat was at the dock below the tunnel passage. On the part of the defense several of the witnesses state that the canal-boat was in the passage when the Monitor, having in tow the bark John Bell, came up the river, and the John Bell came in collision with the canal-boat.

Whichever hypothesis be true,—whether she was in or below the passage moored at

the dock,—I think that the libellant is entitled to recover, because the canal-boat had a right to pass down through the tunnel passage, and it had a right to be moored at the dock, because the harbor-master had given express instructions for mooring the canal-boat at that place; therefore, the canal-boat was in a lawful position, or acting lawfully, and it was the duty of the Monitor to avoid coming in collision. If the canal-boat was in the passage they should have held up entirely, or should have gone so slowly as to have rendered the collision of no consequence; or if she was at the dock, of course it was the duty of the Monitor to avoid the collision.

Which is liable? I confess that I have not seen anything in the evidence to satisfy me that there was any fault on the part of the John Bell. Taking the proof as it is, she followed the Monitor in tow. The collision might have been the result, as it is claimed, of the suction of the water forced by the passage of the Bell; but that is one of those natural incidents which the tug was bound to guard against just as much as anything else in such a narrow passage, and it is a lesson which these tugs must learn if this court can teach it to them,—that they, in going through these dangerous, critical places, must use greater precautions than they do; and there is nothing that will teach them except compelling them to pay. It was clear to those who had charge of the tug that there was a canal-boat there. It was in open daylight. There was nothing to prevent them from seeing what was there, and instead of taking care to guard against it, they rushed headlong at an ordinary rate of speed, and let the weakest take care of herself. That is a rule that will not do in such a narrow thoroughfare as the Chicago river, and especially when they were tunnelling the river. The tugs must be more careful. It is not a question whether they will get through with a tow and be ready five, ten, or fifteen minutes sooner to take another, but when they are engaged in their business they must do it carefully, cautiously, and prudently, with regard to the rights of others. I have no doubt of the liability of the tug. Decree for libellant.

As to the caution required of a tug moving in a crowded harbor, see The Little Giant [Case No. 8,401] and The Alleghany [Id. 205].